Cassie Rockwood ⎫
       vs. ⎬ No. 93088.
Reginald Belliveau ⎭

November 22, 1934.

CHURCHILL, J. Heard on motion for a new trial filed by the defendant after a verdict for the plaintiff for $17,000.

Calvin Rockwood, husband of the plaintiff, was struck and killed by an automobile owned by the defendant and operated by one Gaza, on April 26, 1934. The accident happened in the Village of Chepachet.

The defendant's car was on its way from New Bedford to Springfield. The defendant was seated in the rear seat. With him in the rear seat was a woman companion and another woman sat in the front seat at the right of the driver. These four persons were all the occupants of the car.

There was no question of the due care of Calvin Rockwood, nor was there any question as to the negligence of the defendant.

The defendant filed a special plea under Chap. 2046, Public Laws of Rhode Island, January Session 1933, in which he sets up the defence that he was not responsible for the acts of the driver of the car.

At the trial the defendant took the position that he never expressly authorized Gaza to drive the car and that while he was in the car, during the entire trip from New Bedford to the scene of the accident, he was intoxicated to such a degree that he was incapable of giving his consent to the driving of the car by Gaza.

All four of the persons in the car met in New Bedford on the day of the accident and partook of liquor, and then started for Springfield. One of the women testified that while at a resort where the four had congregated, it was decided to go to Springfield; that Belliveau came out and, although drunk, got into the car unassisted; that Gaza said, "I am going to drive"; that Belliveau then got into the back seat. The woman who sat on the rear seat with Belliveau testified that she and Belliveau talked together and that Belliveau and Gaza talked together, although she could not give any specific portion of the conversation. The woman who sat on the front seat testified that she heard a few words between Belliveau and Gaza during the trip and that half an hour before the accident took place, Belliveau asked Gaza to stop the car, saying, "Jack, stop, I want to get out"; both he and Gaza got out of the car, were gone about five minutes and returned.

Under the facts developed in the case, the jury were not bound to believe either Gaza or Belliveau and were fully justified in not believing either of them. Under all the testimony the jury were warranted in find-

ing that at all times during the trip the defendant was sufficiently sober to consent to the driving of the car by Gaza. The verdict on this issue is in accord with the evidence.

The verdict was for $17,000.

Calvin Rockwood was 28 years of age and had an expectancy of life of 35.69 years. Previous to 1932 he had been employed as a shoemaker in a shoe-shop in Webster, Massachusetts, and earned from $35 to $40 a week. The shop closed in 1932 and then he had various jobs in East Greenwich and Uxbridge, driving a truck, doing odd jobs when unemployed during the winter, working at a gasoline station, and in Uxbridge working in the dyeroom at the Stanley Woolen Company. In these various employments his pay averaged from $28 a week to $18 a week, when he was working at the Stanley Woolen Company. The Stanley Woolen Company closed in November, 1933, and he then became a CWA worker at $15 a week, was transferred to another relief department at $12 a week and finally, on April 1, 1934, was working on a relief project at $8.20 for two days a week and, as his wife testified, made about $10 more a week doing odd jobs and peddling quahaugs. The testimony as to his expenses is somewhat meagre but would warrant a finding that such expenses ran from about $7 to $8 a week.

It is fair to infer from the testimony that Rockwood was an industrious, hardworking man, who was anxious and willing to work at anything to which he could turn his hands. Whether he would ever have returned to his old scale of wages as a shoemaker in Webster, or whether at any other employment he ever would have received that amount, are matters wrapped in total obscurity and are entirely speculative.

While it is true that in estimating damages the jury were not obliged to

take the exact amount he was earning at the time of his death as a basis on which to estimate his earning capacity in the future, yet the only reliable testimony we have on which the jury was reasonably warranted to rely is that relating to his earning capacity, say, from 1932 to the date of his death.

It seems to the Court that the verdict is excessive, if the damages are measured by any standard outside of the sheerest speculation. The size of the verdict is probably accounted for by the character of the defence that was interposed and the shocking circumstances attending the death of the deceased. These two factors would have inflamed the minds of any ordinary jury.

A new trial is granted on all of the issues unless the plaintiff, within eight days, remits all of the damages in excess of $10,000.

For plaintiff: John R. Higgins & Silverstein.

For defendant: Eugene R. Gilmartin.